UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                             CASE NO.

NATIONAL INDUSTRIAL                                04-02909-5-ATS
CONTRACTORS, INC.

    DEBTOR


ORDER DENYING APPLICATION FOR ADMINISTRATIVE CLAIM
AND ALLOWING OBJECTION TO CLAIM

The matters before the court are the application for an administrative claim filed by U.S. Bancorp Equipment Finance, Inc. and the objection to claim filed by the debtor. A hearing took place in Raleigh, North Carolina on June 22, 2005.

National Industrial Contractors, Inc. filed a petition for relief under chapter 11 of the Bankruptcy Code on August 10, 2004. The debtor and U.S. Bancorp were parties to a Master Lease Agreement and Schedule related to a Standard Industrial Corporation Shear. The debtor defaulted on its postpetition payments under the lease, and pursuant to the confirmed plan of reorganization, the debtor surrendered the equipment to U.S. Bancorp. U.S. Bancorp now seeks an administrative claim in the amount of $7,076.30 for unpaid lease payments from the date of filing to the date of confirmation. The debtor contends that the agreement is a disguised security interest, not a true lease, and that U.S. Bancorp is entitled only to an unsecured deficiency claim under the confirmed plan.

The Master Lease Agreement provides that the lessor is the owner of the equipment and provides for surrender at the end of the lease term if the purchase option is not exercised. The agreement also provides that the lessee may not cancel the lease. The Schedule to the lease states that if any terms of the Schedule are inconsistent with the Master Lease Agreement, the terms of the Schedule "shall prevail." The Schedule then provides that the lessee is obligated to purchase the equipment for $1.00 at the end of the lease term, that the ownership of the equipment is transferred to the lessee, that the lessor will retain a security interest in the property, and that the Schedule shall constitute a conditional sales contract and "Lessor is not and shall not be deemed to be the owner of the Property for any purpose." The Schedule also provides that the lessee does not have a right of cancellation. U.S. Bancorp filed a UCC financing statement within 10 days of the execution of the documents.

It is clear from the Schedule that the parties agreed the "lease" was truly a security agreement. The Schedule states that its terms control in the event of a conflict, and its terms are undeniably those of a purchase agreement with a retained security interest.

Even if the terms of the Schedule were not clear, the Uniform Commercial Code provides guidance on determining whether an agreement is a true lease or a security agreement. The Master Lease Agreement provides that it is to be interpreted under Oregon law, and Oregon has

2

adopted § 1-201 of the Uniform Commercial Code.  That section provides, in relevant part, that

> a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and:
>
> \* \* \*
>
> (B) The lessee is bound . . . to become the owner of the goods; [or]
>
> \* \* \*
>
> (D) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

Or. Rev. Stat. § 71.2010(37)(a).  The terms of the agreement fall well within the Uniform Commercial Code definition of a security interest because the debtor did not have a right of cancellation, the lessee was bound to become the owner (in fact, title transferred with the execution of the agreement), and the debtor had the option to purchase the equipment for only $1.00 at the end of the lease.

Notwithstanding the fact that the documents establish a security agreement, U.S. Bancorp contends that the court should look to the parties' treatment of the agreement as a lease, and estop the debtor from contending that the agreement is not a true lease.  When the debtor filed its schedules on August 25, 2004, it listed U.S. Bancorp as a party to an unexpired lease.  The debtor's initial plan of reorganization, filed on November 9, 2004, did not address U.S.

3

Bancorp.  It did provide that all leases (with one exception) would be deemed rejected.

On December 6, 2004, U.S. Bancorp filed a motion for relief from the automatic stay to gain possession of the equipment due to the debtor's default.  The debtor then filed its first amended plan on December 17, 2004, treating U.S. Bancorp as a secured creditor.  On December 21, 2004, the debtor filed a response to U.S. Bancorp's motion for relief from the automatic stay, contending that the lease agreement was not a "true lease," but was a financing arrangement.  On December 27, 2004, U.S. Bancorp objected to the debtor's plan, arguing, among other things, that the debtor's plan unfairly discriminated between various classes by proposing to amortize certain secured claims while paying a reduced rate of interest to U.S. Bancorp, and that the plan failed to pay U.S. Bancorp the present value of its property.

On March 15, 2005, the plan was confirmed with the treatment of U.S. Bancorp amended to provide that the debtor would surrender the equipment to U.S. Bancorp.  The order of confirmation stated that the debtor believes the creditor is a secured creditor and that its deficiency claim should be treated as unsecured, but nothing in the order would preclude U.S. Bancorp from filing an administrative proof of claim and seeking a determination of whether the agreement was a true lease or a security interest.  Similarly, the parties entered a consent order resolving the motion for relief from the automatic stay

on April 19, 2005, specifically reserving the question of whether the agreement was a true lease or a security interest.

While the debtor did list the agreement as a lease in its schedules, and appeared to treat the agreement as a lease in its original plan of reorganization (by omitting U.S. Bancorp from the plan), it is not unusual for a debtor to prepare its initial filings without a detailed review of its documents. Here, the debtor relied on the title of the document and listed the agreement as a lease. Upon a more careful review after the motion for relief from the automatic stay was filed, the debtor asserted that the agreement was really a security agreement. There was no extraordinary delay in the debtor's taking this position, and there were no agreements or other acts taken in reliance on the treatment of the agreement as a lease. Accordingly, the court will not estop the debtor from now asserting that the agreement creates a security interest.

Based on the foregoing, the terms of the agreement and the governing law establish that the agreement creates a security interest in favor of U.S. Bancorp. Accordingly, the application for an administrative claim is **DENIED**, and the objection to claim is **ALLOWED**.

**SO ORDERED.**

**DATED: June 22, 2005**

A. Thomas Small
United States Bankruptcy Judge